## Weaver *versus* Roth, Administrator.

In an action by A., administrator of B., against C., to recover the proceeds of a note paid to C., which, it was claimed by A., belonged to B.'s estate, C. was offered as a witness in his own behalf to prove in defence that after B.'s death, C. D. and E., his surviving children and only heirs, agreed to divide the estate without administration, and in that division the said note was given to C. in consideration of services rendered by him to B. The offer was excluded on the ground that D., one of the parties to the alleged agreement, having died subsequent to B.'s death and to the making of the alleged agreement, and prior to the present trial, C. was incompetent to testify as to matters occurring prior to the deaths of B. or D.

*Held,* to be error. That as D. was not the person whose estate,

[Weaver v. Roth.]

through a legal representative, was a party to the record, C. was competent, under the Acts of April 9, 1870, and May 11, 1881, to testify to all matters occurring since the death of B., whether subsequent or prior to the death of D.

*Held,* further, that as the offer was to prove a family arrangement, it would, if established by the evidence, have been a good defence to A.'s action.

February 20, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Lehigh county:* Of January Term, 1884, No. 289.

Assumpsit, by Jeremiah Roth, administrator of Henry Weaver, deceased, against Job Weaver, to recover the sum of $500, with interest, paid to the defendant by one Peter Benner, which sum, it was claimed by plaintiff, belonged to the estate of Henry Weaver, deceased.

On the trial, before ALBRIGHT, P. J., the following facts appeared : Henry Weaver died in 1878 intestate, leaving surviving him three children, Enos Weaver, Elizabeth Heimbach, *née* Weaver, and the said Job Weaver. Among the assets of his estate was a note for $500, drawn by one Peter Benner to the order of Henry Weaver, which note was paid by Benner in 1880 to Job Weaver, and the proceeds retained by him. On April 22, 1882, Enos Weaver died, and in 1883, Jeremiah Roth, having been appointed administrator of Henry Weaver, deceased, brought this suit against Job Weaver to recover the amount of the Benner note, with interest.

The defendant was offered in his own behalf to prove that " subsequent to the death of Henry Weaver, deceased, he and the two other heirs, viz., Elizabeth Heimbach and Enos Weaver, agreed to a division of the personal estate of the said decedent; that each party accepted the shares and held shares allotted to each of the parties, and that the $500 Benner note was delivered and given to Job Weaver, the defendant, in consideration of the services rendered to his father during an illness of five years and eight months."

Objected to by plaintiff on the ground that witness is incompetent to testify as to any matters that occurred prior to the deaths of either Henry Weaver or Enos Weaver.

" The Court: The objection to the witness testifying to matters occurring in the lifetime of Henry Weaver, deceased, also the objection to his testimony as to any contract between Mr. Enos Weaver, now deceased, and himself, or to any contract to which Enos Weaver was a party so far as it relates to matters occurring in the lifetime of Enos Weaver is sustained. Exception." (First assignment of error.)

The court instructed the jury that the defendant could not

set off in this action any claim for services rendered to his father, but that such claim could only be set up on the distribution of Henry Weaver's estate in the Orphans' Court; that if the jury believed that Benner had paid the note to Job Weaver they should render a verdict for the plaintiff.

Verdict for the plaintiff for $606.46, and judgment thereon. The defendant took this writ of error, assigning as error the exclusion of his testimony and the said instruction of the court.

*C. J. Erdman* for the plaintiff in error.—Under the provisions of the Act of April 9, 1870, as amended by the Act of May 11, 1881, Job Weaver was competent to testify to all matters occurring since the death of Henry Weaver. The death of Enos Weaver could not disqualify him as to matters occurring prior thereto, for Enos Weaver was not "the person whose estate, through a legal representative, is a party to the record." Enos Weaver was neither directly nor indirectly a party to the record. He was simply interested in the event of the suit. Henry Weaver was the person whose estate, through a legal representative, Jeremiah Roth, was a party to the record; and while the proviso of the Act of 1869 undoubtedly disqualified Job Weaver, yet the enabling and amendatory Acts of 1870 and 1881 qualified him as to all matters occurring since the death of Henry Weaver. The legislature having opened his mouth to this extent, there was no statutory warrant for holding that the subsequent death of Enos Weaver sealed it again: Rothrock's Exrs. *v.* Gallaher, 10 Norris, 108.

*Marcus C. L. Kline* for the defendant in error.—Where one of the parties to a transaction is dead, the survivors cannot be permitted to testify to matters in relation thereto that occurred during the lifetime of the deceased: Arthurs *v.* King, 3 Norris, 525; Hanna *v.* McVay, 27 P. F. S., 27; Karnes *v.* Tanner, 16 P. F. S., 297; Alcorn's Exr. *v.* Cook, 5 Out., 209. In the case of Rothrock's Exrs. *v.* Gallaher, 10 Norris, 108, cited by counsel for plaintiff in error, the defendant was permitted to testify that the package in which the bonds were supposed to be, was in the same condition when opened by one of the witnesses as it was in "from and immediately after the death of" the intestate. It was not there pretended to prove an agreement by the defendant where one of the parties thereto was dead, like in the present case. Had Job Weaver been asked where he found the Benner note after Henry Weaver's death, what he did with it, when it was paid, and questions of that character, he would have been com-

petent to testify to matters of that kind under the Act. But that he should be competent to prove an agreement made subsequent to the death of Henry Weaver, with Enos Weaver and Elizabeth Heimbach, for the benefit of the defendant, at a time when one of the parties to the agreement is dead, and which is the foundation of the defendant's set-off and defence to defeat plaintiff's recovery, is not what the Acts of April 9, 1870, and May 11, 1881, contemplated.

Mr. Justice CLARK delivered the opinion of the court, April 7. 1884.

Job Weaver, who was offered as a witness on his own behalf, is a party to the record; he is the defendant in the action. Upon the ground of interest, as well as by the policy of the law, as it was prior to the passage of the statute of 15th April, 1869, he was incompetent; and, although embraced in the broad provision of the enabling clause of that statute, he was expressly excluded from its operation by the terms of the proviso. The suit was brought against him by an administrator. But he was offered to testify to matters occurring since the death of the person whose estate, through a legal representative, is a party to the record; is he not, therefore, rendered competent for that purpose by the Act of 9th April, 1870? This Act, as amended by the Act of 11th May, 1881, is in the following words:

" In all actions or civil proceedings in any of the courts of this Commonwealth, brought by or against executors, administrators or guardians, or in actions where the assignor of the thing or contract in action may be dead, no interest or policy of law shall exclude any party or person from testifying to matters occurring since the death of the person whose estate, through a legal representative, is a party to the record."

The offer of the defendant's counsel was substantially as follows:

" The defendant proposes to prove by the witness that subsequent to the death of Henry Weaver, deceased, he and the two other heirs, viz., Elizabeth Heimbach and Enos Weaver, agreed to a division of the personal estate of the said decedent; that each party accepted and held the shares allotted them, and that the $500 Benner note was delivered and given to Job Weaver, the defendant, in consideration of the services rendered to his father during an illness of five years and eight months."

. It will be observed that the offer was not to show that any services had been rendered by Job Weaver to his father in his illness, nor the value of such services, nor, indeed, anything occurring in the lifetime of Henry Weaver, but that after his

death, by a family arrangement, the Benner note was delivered to Job Weaver for services which were then acknowledged to have been rendered. For this purpose, so far as the estate of Henry Weaver was concerned, he was undoubtedly competent.

But it is objected, that by the death of Enos Weaver, one of the heirs of Henry Weaver, deceased, a few days before the trial, the witness was rendered incompetent; that the matters here urged as · a defence involve an affirmative independent transaction, in which Enos Weaver was an active party; a family arrangement made after Henry Weaver's decease, concerning property which, in equity at least, belonged to the family, and that the parties to that alleged arrangement, by reason of the death of Enos, stand upon an unequal footing as to a knowledge of it; that the rights of Enos have, by operation of law, devolved upon others, who are his assignees, and that, therefore, Job Weaver was one of the surviving parties ·to a transaction out of which this adversary and independent claim in this litigation has grown. We are urged, therefore, in the argument of counsel, although the language of the statute is not only admittedly distinct and clear in its terms, but plain and obvious in its meaning, to search for some occult meaning, as if the language was equivocal and its signification doubtful.

Enos Weaver, in his lifetime, was not a party to the record ; his interests were doubtless involved in the controversy, he was passively affected by the result, but he was not an active party in the suit. Nor is the action brought or maintained by or against his administrator or executor; he is not the person whose estate, through a legal representative, is a party to the record. A legal representative of a deceased person is one who is the administrator or executor of the estate of that person. In no proper sense can it be said that Jeremiah Roth is the legal representative of the estate of Enos Weaver, deceased, and as such a party to the record; he is the legal representative of the estate of Henry Weaver, deceased, and therefore, by the express terms of the statute, ·" no interest or policy of law can exclude any party or person from testifying to matters occurring since " Henry Weaver's death. When the words of a statute are plain and direct we have a right to assume that its meaning is expressed in those words; there is in such case no room for construction. The Act of 1870, and its amendment of 1881, are remedial and enabling statutes, and should be liberally construed. We are not inclined to import into their provisions anything which will abridge their operation or limit their effect.

It follows, therefore, that Job Weaver was a competent

witness, and if the subject matter was relevant to the issue the court erred in refusing to admit the defendant's offer.

The facts upon which the case of Walworth v. Abel, 2 P. F. Smith, 370, was determined, are similar in most respects to those proposed to be established by Job Weaver. It was there held that the mere legal estate in the personal property of a decedent passes to an administrator; the equitable title descends upon the parties entitled to distribution; that, therefore, if there be no creditors " the heirs have a complete equity in the property, and, if they choose, instead of taking letters of administration to distribute, they may " distribute it by arrangement, made and executed amongst themselves. Mr. Justice THOMPSON, in delivering the opinion of the court in that case, says: " The parties to such an arrangement executed would be for ever equitably estopped from disturbing it, as among themselves, upon the most familiar principles of justice. And why shall the arrangement be broken up by a mere intermeddler? Family arrangements are favorites of the law, and, when fairly made, are never allowed to be disturbed by the parties, or any other for them."

If the facts contained in the defendant's offer were established by the proof, it would appear that at Henry Weaver's death no claims were asserted against his estate excepting that of his son Job Weaver; that he was not otherwise indebted; after making a proper provision for the settlement and satisfaction of that claim, therefore, they had a complete equity to the surplus of his estate, and might distribute it among themselves as they chose. The intervention of the Orphans' Court to effect a distribution is wholly unnecessary where all the parties in interest have themselves agreed upon one; administration is but the legal means of obtaining the same result.

There was some evidence, perhaps, of this family arrangement elicited from other witnesses, scarcely sufficient, however, we think, to justify a submission to the jury. The facts thus shown would have been corroborating in their character if the facts contained in the offer had been shown. Of themselves they were insufficient, and upon this branch of the case we think the court was correct.

The judgment is reversed, and a venire facias de novo awarded.