Moyer Estate.

Argued April 18, 1957.   Before JONES, C. J., MUS-MANNO, ARNOLD, JONES and COHEN, JJ.

*Edward Youngerman,* with him *Joseph E. DeSantis,* for appellants.

*George B. Balmer,* with him *Robert Morgan Smith* and *Snyder, Balmer & Kershner,* for appellees.

*Paul D. Edelman,* with him *James F. Marx* and *Gilbert Cassidy, Jr.,* for appellees.

Opinion Per Curiam, May 29, 1957:

The decree of the court below is affirmed on the able opinion of President Judge Marx, the pertinent portions of which are as follows:

"Jacob L. Moyer, the testator, died on February 2, 1882, survived by his wife and five children. His will, dated August 15, 1881, was probated on February 7, 1882. At the time of his death he owned property No. 725 Penn Street and property No. 818 Penn Street, Reading. By his will he imposed a trust on those properties, to the use of his wife for life, with remainders as follows:

" 'Upon the decease of my wife the rents aforesaid after payment of repairs, taxes and insurance shall be divided quarterly among all of my children in equal shares, or their heirs, until the year of Our Lord 1901, at which time my youngest son will be twenty-three years old. My desire is then if a majority of my children or their heirs deem it advantageous, that said two properties be sold . . . and the proceeds of said sale shall be invested upon real estate securities for the benefit of all my children during their natural life. They to receive interest semi-annually and upon their decease the principal to their children absolutely.'

"Mary Moyer, wife of the testator, died on June 11, 1922. The five surviving children were:

"1. John E. Moyer, who died February 12, 1892, survived by a daughter, Jennie K. Erdman, and a son,

Jacob L. Moyer, also known as Jacob L. Moyer, II. The daughter, Jennie, died April 23, 1942, intestate, survived by her husband, Willard P. Erdman, a son, George Richard Kemp, and a daughter, Doris Elizabeth Kemp Fisher. Jacob L. Moyer, II died October 8, 1932, leaving a will dated March 11, 1926, giving the residue of his estate to George Richard Kemp and Doris Elizabeth Kemp Fisher.

"2. Charles E. Moyer, who died January 21, 1895, intestate and without issue.

"3. Ellen Lewis, who died June 11, 1922, survived by Harrison Lewis, her son, who died December 17, 1943, survived by his wife, Jean D. Lewis, and a son, Robert P. Lewis, who died intestate, survived by children.

"4. J. Linnington Moyer, who died December 3, 1944, intestate, survived by two children, now living, Marylin Moyer Reed Mohn and Bonita June Moyer Sherman.

"5. Anna Heck, who died December 2, 1954, without issue.

"After the death of the testator's widow, June 11, 1922, the testamentary trustee filed an account covering the principal fund and the income accrued to the death of the widow. After audit an adjudication, with a decree of distribution, was confirmed on December 23, 1922. The auditing judge said, inter alia, 'Testator's widow having died, the principal fund on which she received a certain amount of the income during her lifetime, is also here for distribution, and represents the proceeds of 725 Penn Street, Reading, Pennsylvania, sold under the Price Act of March 22, 1910,* being one

---

* Obviously, the learned court below inadvertently erred in its citation to the Price Act. The property in question was sold by reason of its dilapidated condition by order of the Orphans' Court of Berks County on March 22, 1909. The sale, therefore, would

of the properties mentioned in the will.

" 'The question involved in the disposition of this fund is whether each child of testator took a vested estate in remainder, to take effect in possession and enjoyment after the year 1901, upon the death of the widow, or whether the trust is to continue after the death of the widow until the death of all the children.'

\*    \*    \*    \*    \*    \*    \*    \*

"The auditing judge held: 'We are of the opinion that the trust did not terminate at the death of the widow, and that the fund in question must be distributed in part to the grandchildren of deceased testator, absolutely, and the balance to be held in trust for the surviving children during their lifetime.

" 'Distribution of the principal fund, in accordance with this opinion, will be in four shares, of which two will be to the grandchildren per stirpes, and the remaining two . . . in trust for the surviving children.'

"Of the children, the sons, John E. Moyer and Charles E. Moyer, and the daughter Ellen Lewis, were then deceased. The son J. Linnington Moyer and the daughter Anna Heck then survived. Distribution of the principal fund, $19,043.50, was awarded as follows:

"1/8 thereof to the assignee of Jennie Kemp,

"1/8 thereof to the assignee of Jacob L. Moyer,

"1/4 thereof to the assignee of Harrison Lewis,

"1/2 thereof to the trustee, subject to the further trusts declared by the will, trustee of Anna Heck and J. Linnington Moyer.

"Exceptions were taken to the decree and, on February 24, 1923, the court filed its opinion saying: 'The

necessarily have been under the provisions of the original Price Act (Act of April 18, 1853, P. L. 503). There is no Price Act of 1910 and it was not until seven years later (Act of June 7, 1917, P. L. 388, 20 P.S. §1561, et seq.) that the Revised Price Act was enacted.

exceptions filed to the adjudication in this estate are all to the effect that we erred in holding that the trust estate created by the will of the testator was to continue after the death of the widow during the lives of the children, and after their death the properties, or the proceeds, were to be divided among the children. . . That the testator intended the absolute interest in these properties to be vested in his grandchildren, subject to the life interests of the widow and children, is a conclusion which seems inevitable from the language of the will. To give it the effect contended for by the exceptants would defeat the clear intention of the testator, which made the grandchildren with the widow and children the objects of his bounty. Testator did not disinherit his heirs at law, but merely limited their interests in the estates:'.

"The exceptions were dismissed.

"An appeal to the Supreme Court of Pennsylvania followed. The decree of the court below was affirmed, the appeal dismissed, the Supreme Court saying, at the conclusion of their opinion, (280 Pa. 131, 135): 'Construing the will in the light of the above rules of interpretation, it is clear testator intended to give the net rents to his wife for life, and after her decease to his children; unless, subsequent thereto and not earlier than the year 1901, the children wished the properties to be sold, in which event this should be done, the proceeds invested and the net income therefrom paid to them, instead of the net rents as theretofore. This being so, the only other question is: Can the language of the will be fairly construed to effectuate that intent? Happily, this can readily and naturally be done, by simply treating the words "and upon their decease the principal to their children absolutely", as applying to the entire paragraph instead of to the last clause only. So considered, the provision would be interpreted as if

it read as follows: "Upon the decease of my wife the rents . . . (of the properties, or, if they are sold after 1901, the income from the proceeds realized thereby) shall be divided . . . among all my children in equal shares and upon their decease the principal (shall go) to their children absolutely".'

"J. Linnington Moyer died on December 3, 1944, survived by his daughter Marylin Moyer Reed, born January 13, 1925, and Bonita June Sherman, born June 16, 1930. After his death, Anna Heck alone, of testator's 'children' survived.

"In an account of the trust, principal and interest, filed January 29, 1946, the accountant charged itself with $4,760.87, principal, took credits, $2,670.93, and held a balance for adjudication and distribution of $2,-122.54. By decree of March 9, 1946, there was awarded in distribution to Marylin Moyer Reed, $1,058.52, and to the guardian of estate of Bonita June Moyer (a minor) $1,058.52.

"In this account (of January 27, 1955) of the interest of Anna Heck, life beneficiary and the interest in remainder, the accountant charges itself with $4,760.88 principal, takes credits, $966.17, and holds a principal balance due the estate of $4,096.07, and an income balance of $2,247.70.

"Anna Heck died without 'children'.

"In our adjudication of May 19, 1956, following the 'law of the case', we adjudged the will to be interpreted as though it read: 'Upon the decease of my wife the rents . . . (of the properties, or, if they are sold after 1901, the income from the proceeds realized thereby) shall be divided . . . among all my children in equal shares . . . and upon their decease the principal (shall go) to their children absolutely.' That ruling was applied in relation to the respective interest of 'children' deceased, distributed heretofore: accrued income to the

life tenant, the absolute estate in remainder to the 'children' of the respective life beneficiaries.

"The testator directed a 'gift to a class', which is a gift of an aggregate sum to a body of persons, uncertain in number at the time of the gift, to be ascertained in the future, who are to take in equal or other definite proportions, the share of each being dependent for its amount upon the ultimate number. Members who are to constitute a class are determined at the time of distribution: Billings's Estate, No. 1, 268 Pa. 67: Haskins v. Tate, 25 Pa. 249.

"The class of beneficiaries in remainder was composed of 'children' of the life beneficiaries. '. . . in the absence of evidence of a contrary intention afforded by the will itself a gift to "children" will not be understood as including any more remote class of descendants': Page's Estate, 227 Pa. 288, 289.

" 'The general principle of law involved is that the word "children" has a sense and meaning which will not be extended to include great-grandchildren': Disston's Estate, 46 D. & C. 496, 503.

" 'The exceptions to the foregoing general principle of law are as GIBSON, C. J., stated in Dickinson v. Lee (4 Watts 82) ". . . where the word is used evidently as co-extensive with issue, which is a word of very general import; and where there are no children literally to answer the description, and then grandchildren are let in ut res magis valeat quam pereat"; and in McGlensey's Estate, 37 Pa. Superior Ct. 514, where it is the clear intention of testator as shown by the whole will that the class be extended.' Disston's Estate, Id. 504.

" 'Under a bequest to children, grandchildren and other remote issue are excluded, unless it be the apparent intention of the testator, disclosed by his will, to provide for the children of a deceased child. But such construction can only arise, from a clear intention

or necessary implication; as where there are not other children than grandchildren, or when the term "children", is further explained by a limitation over, in default of issue. The word "children" does not ordinarily, and properly speaking, comprehend grandchildren, or issue generally. Their being included in that term, is only permitted in two cases, viz., from necessity, which occurs when the will would remain inoperative, unless the sense of the word, "children" were extended beyond its natural import; and where the testator has clearly shown by other words that he did not intend to use the term "children", in the proper actual meaning, but in a more extensive sense': Clark's Estate, 61 D. & C. 34, 36, Hunt's Estate, 133 Pa. 260, Worstall's Estate, 125 Pa. Superior Ct. 133, Gross Estate, 80 D. & C. 595, 598.

" 'Where a gift is to the children of several persons, whether it be the children of A or B, or to the children of A and the children of B, they take per capita, not per stirpes.' 2 Jarman on Wills, 1687 (7th Edition), Lenhart's Estate, 344 Pa. 358, Love Estate, 362 Pa. 105, 108.

"This testator died February 2, 1882, was survived by his wife, who died June 11, 1922, and five children, viz.:

"(1) John E. Moyer, a son, who died February 12, 1892, survived by two children, Jennie K. Erdman, who died April 23, 1942, survived by a son George Richard Kemp and a daughter, Doris Elizabeth Kemp Fisher, and by Jacob L. Moyer, also known as Jacob L. Moyer, II, who died October 8, 1932, testate (will, March 11, 1926), leaving all to George Richard Kemp and Doris Elizabeth Kemp Fisher.

"(2) Charles E. Moyer, son, who died January 21, 1895, intestate and without children or issue.

"(3) Ella Lewis, daughter, who died June 11, 1922, survived by Harrison Lewis, a son, who died De-

cember 17, 1943, survived by wife (Jean D.) who died intestate December 18, 1945, by Robert P. Lewis, son, and by three (3) children of Jean D. Lewis taken by adoption: Jean Dorothy Lewis, now Strohmeier, Joan Dolores Lewis, now Pierce, and Jerry Harrison Lewis.

"(4)  J. Linnington Moyer, son, who died December 3, 1944, intestate, survived by two (2) children, now living, and sui juris: Marylin Moyer Reed Mohn and Bonita June Moyer Sherman.

"(5)  Anna Heck, daughter, who died December 2, 1954, without issue.

"In McCauley's Estate, 257 Pa. 377, the widow took a life estate. Upon her death the entire balance was to be converted into money and divided into three equal parts. One of the children named to take in remainder died before the termination of the life estate. The Orphans' Court decided that such child's right to take was contingent upon her surviving the life tenant, and that having predeceased the life tenant, she took nothing under the will. On appeal the Supreme Court held that the child took a vested interest, and the decree of the lower court was reversed. The following principles, pertinent to this issue, were there cited:

" 'Where a legacy is made payable at a future time, certain to arrive, and not subject to conditions precedent, it is vested where there is a person in esse at the time of the testator's death capable of taking when the time arrives, although his interest be liable to be defeated altogether by his own death.

" 'Where a bequest is to a class, the vesting is not postponed because of uncertainty as to who, if any, may be the constituents of the class at the time fixed for the enjoyment of it.

" 'If there is a present right to a future possession, though that right may be defeated by some future event, contingent or certain, there is nevertheless a vested estate.'

"In Marshall's Estate, 262 Pa. 145, the question before the court below was, 'Was the legacy vested or contingent'.

"The Supreme Court said (148) : 'Charles Marshall was in being at the time of the death of his grandfather. The bequest to him, though subject to a precedent life estate, was unconditionally payable to him at the happening of an event certain to happen—the death of his father—at which time he would have been capable of taking if living. . . "As a general rule, a legacy is to be deemed vested or contingent, just as the time shall appear to be annexed to the gift, or the payment of it. If futurity is annexed to the substance of the gift, vesting is suspended; but if it appears to relate to the time of payment only, the legacy vests instantly. The point which determines the vesting is not whether time is annexed to the gift, but whether it is annexed to the substance of the gift, as a condition precedent. Where there is an antecedent absolute gift, independent of the direction and time of payment, the legacy is vested. . . . Where the fund, which is the subject of the legacy, is given to another person beneficially for life, or until the legatee arrives at a particular age, or until certain debts are paid, the legatee will take an immediate vested interest in the subject, since such bequests are in the nature of remainders. . ." '

"The Supreme Court held that the grandson, Charles, having died during the lifetime of his father, intestate, unmarried and without issue, the legacy to Charles being vested, passed to his father, James, who was his next of kin under the intestate laws. (See also Reed's Estate, 307 Pa. 482; Newlin Estate, 367 Pa. 523, 527.)

"We conclude that the gifts given to the children of the five children of the testator, constituted vested estates absolute in remainder. The gifts to the five children of the testator were life estates. The gifts,

subsequent to those life estates vested, at the death of the testator, in the 'children' of the five 'children' of the testator. The gift in remainder vested at the death of the testator, and notwithstanding that some of the beneficiaries or donees of those gifts, died before the termination of the preceding life estates, the title in remainder, having vested, was not divested by the death of a donee prior to the termination of the life estate.

\* \* \* \* \* \* \# \#

"We accordingly find Jennie K. Erdman, Jacob L. Moyer, II, Harrison Lewis, Marylin Moyer Reed Mohn and Bonita June Moyer Sherman, constitute the class of 'children' of the named life tenants, entitled to participate in the per capita distribution of the remainder of the trust, or principal of this estate. The further disposition of the remainders of the trust, rests in the dispositions made by the deceased of the foregoing beneficiaries, of their respective interests by will, under intestate law, by sale and assignment or other disposition. (Reference may be had to Garman's Estate, 211 Pa. 264; Plogstert Estate, 350 Pa. 474.)"

Decree affirmed. Costs to be paid by appellants.